**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

RUSTY J. LEBOEUF                                    CIVIL ACTION

VERSUS                                             NO.   21-2147

DUSTIN BICKHAM, WARDEN                              SECTION: "E"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Rusty J. LeBoeuf, is a convicted inmate currently incarcerated at the Dixon Correctional Institute in Jackson, Louisiana.    On August 15, 2017, LeBoeuf was charged by bill of information with sexual battery with a victim under 13 years old in violation of La. Rev. Stat. § 14:43.1(C)(2).[1]    On July 13, 2018, the State amended the bill of information to charge LeBoeuf with indecent behavior with a juvenile under 13 years of age in violation of La. Rev. Stat. § 14:81.[2]    After a trial, on July 16, 2018, a jury found LeBoeuf guilty as

---

[1]  State Rec., Vol. 1 of 3, Bill of Information, 8/15/17.

[2]  State Rec., Vol. 1 of 3, Amended Bill of Information, 7/13/18; Minute Entry, 7/13/18; State Rec., Vol.

charged.[3]    LeBoeuf's post-conviction motions for a new trial and judgment of acquittal were denied.[4]    On September 21, 2018, LeBoeuf was sentenced to 15 years to be served at hard labor.[5]    The trial court denied LeBoeuf's oral motion to reconsider his sentence.[6]

On direct appeal, LeBoeuf's appointed counsel asserted that: (1) the trial court erred by denying his motion to reconsider his sentence and (2) his sentence is unconstitutionally excessive.[7]    On August 2, 2019, the Louisiana First Circuit Court of Appeal affirmed his conviction, but vacated LeBoeuf's sentence as illegally lenient and remanded the case for resentencing.[8]    LeBoeuf did not file a related writ application with the Louisiana Supreme Court.

On December 10, 2019, the trial court resentenced LeBoeuf to a sentence of 15 years with the first two years to be served without the benefit of probation, parole or suspension of sentence.[9]    LeBoeuf did not appeal his new sentence.

On October 12, 2020, LeBoeuf filed an application for post-conviction relief with the

---

3 of 3, Rearraignment Transcript, 7/13/18.

[3]    State Rec., Vol. 1 of 3, Minute Entry, 7/16/18;    Verdict, 7/16/18; Trial Transcript, 7/16/18; State Rec., Vol. 2 of 3, Trial Transcript (con't), 7/16/18; State Rec., Vol. 3 of 3, Trial Transcript (con't), 7/16/18.

[4]    State Rec., Vol. 1 of 3, Motion for New Trial, 7/19/18; Motion for Post-Verdict Judgment of Acquittal, 7/19/18; Minute Entry, 8/14/18.

[5]    State Rec., Vol. 1 of 3, Minute Entry, 9/21/18; Commitment Order, 9/21/18; State Rec., Vol. 3 of 3, Sentencing Transcript, 9/21/18.

[6]    State Rec., Vol. 3 of 3, Sentencing Transcript, p. 6, 9/21/18.

[7]    State Rec., Supp. Vol. 1 of 1, Appeal Brief, 2018 KA 1777, 1/25/19.

[8]    *State v. Leboeuf*, No. 2018 KA 1777 (La. App. 1 Cir. 8/2/19), 281So.3d 714; State Rec., Supp. Vol. 1 of 1.

[9]    State Rec., Vol. 1 of 3, Minute Entry, 12/10/19; State Rec., Vol. 3 of 3, Resentencing Transcript, 12/1019.

trial court.[10]    In that application, he asserted (1) the court exceeded its jurisdiction; (2) his conviction was obtained in violation of the Constitution; (3) his trial was ineffective for failing to investigate and call witness Winford LaFont and failing to request a continuance of trial once the bill of information was amended.    On October 26, 2020, the trial court denied the application for post-conviction relief.[11]

On December 29, 2020, LeBoeuf filed a writ application with the Louisiana First Circuit Court of Appeal.[12]    On April 22, 2021, the Louisiana First Circuit denied LeBoeuf's writ application without reasons.[13]

LeBoeuf filed a related writ application with the Louisiana Supreme Court.[14]    On October 19, 2021, the Louisiana Supreme Court denied LeBoeuf's writ application finding that he failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and failed to satisfy his post-conviction burden of proof as to his remaining claims, citing La. Code Crim. P. art. 930.2, and also that the application was repetitive, citing La. Code Crim. P. art. 930.4(B).[15]

---

[10]    State Rec., Vol. 3 of 3, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petition.    Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).    The post-conviction application made a part of the state record is dated November 7, 2021.

[11]    State Rec., Vol. 3 of 3, Order denying application for post-conviction relief, 10/26/20.

[12]    State Rec., Supp. Vol. 1 of 1, 1st Cir. Writ Application, 2019-K-0205, 1/6/21 (signed 12/29/20).

[13]    *State v. Leboeuf*, No. 2020 KW 1354, 2021 WL 1575442 (La. App. 1 Cir. Apr. 22, 2021); State Rec., Vol. 3 of 3.

[14]    Rec Doc. 3-8, La. S. Ct. Writ Application, 2021-KH-00725, 5/8/21.

[15]    *State v. LeBoeuf*, 2021–KH–00725 (La. 10/19/21),326 So.3d 247; State Rec., Vol. 3 of 3.

On November 7, 2021, LeBoeuf filed the instant application for *habeas corpus* relief.[16] In that application, LeBoeuf claims: (1) ineffective assistance of counsel based the failure to investigate the case, subpoena Winford LaFont to testify, and to file a motion to continue the trial when the bill of information was amended; (2) the trial court "exceeded its jurisdiction;" and (3) his conviction was obtained in violation of the Constitution and he was denied due process when the bill of information was amended three days prior to trial.

The State appears to concede that LeBoeuf has exhausted his state-court remedies with respect to all of the claims, but argues that the application should be dismissed as untimely.[17]    Alternatively, the State contends that LeBoeuf's claims are meritless.    For the following reasons, the Court rejects the State's argument that the federal petition is untimely and will therefore review the merits of the claims.

### Preliminary Review-Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., governs the filing date for this action because Smith filed his *habeas* petition after the AEDPA's effective date.    *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997).    The AEDPA generally requires that a petitioner bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final."[18]

---

[16]  Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody.

[17]  Rec. Doc. 7.

[18]  Title 28 U.S.C. § 2244(d) provides additional grounds, that do not apply here:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.    The limitation period shall run from the latest of—

With regard to finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.* at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

The State contends that LeBoeuf's conviction became final on September 1, 2019, the

---

A.  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

C.  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

day his time for filing a writ application to the Louisiana Supreme Court relating to his direct appeal expired.[19]    The State's calculation, however, fails to take into consideration that LeBoeuf was resentenced on December 10, 2019.

"[W]hen a state prisoner's conviction is affirmed on direct appeal but the sentence is vacated and the case is remanded for resentencing, the judgment of conviction does not become final within the meaning of 28 U.S.C. § 2244(d)(1)(A) until both the conviction and the sentence have become final by the conclusion of direct review or the expiration of the time for seeking such review."    *Scott v. Hubert*, 635 F.3d 659, 666 (5th Cir. 2011). Therefore, under § 2244(d)(1)(A), petitioner's criminal judgment became "final" on January 9, 2020, when his period expired for seeking direct review after resentencing.    *See* La. Code Crim. P. art. 914 (providing for a 30-day period in which to seek appeal).    LeBoeuf then had one year, until January 9, 2021, by which to file his habeas corpus petition.    However, LeBoeuf did not file the instant federal *habeas* petition with this Court until November 7, 2021.    Thus, his application must be dismissed as untimely unless the deadline was extended through tolling.

Regarding the tolling of the statute of limitations, the AEDPA expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."    28 U.S.C. § 2244(d)(2). Here, the state court record shows that on October 12, 2020, LeBoeuf filed his application for post-conviction relief thereby tolling the one-year federal limitations period after 276

---

[19]  Rec. Doc. 7, p. 5 (citing La. Code Crim. P. art. 922(B).

days.    His applications remained properly filed and pending with the state courts and his

time continued to be tolled until October 29, 2021, when the Louisiana Supreme Court

denied his application for supervisory writs.    LeBoeuf had 80 days remaining of the one-

year limitations period at this point, or until January 18, 2022, in which to file his federal

application.    LeBoeuf filed his habeas petition on November 7, 2021, well within the

limitations period.    For this reason, the Court rejects the State's argument that the

application should be dismissed as untimely.

*Facts*

The record facts as succinctly summarized by the Louisiana First Circuit on direct

appeal established the following:

> In June of 2017, twelve-year-old K.C.[1] lived in Cut Off, Louisiana,
> in Lafourche Parish, with her mother, brothers, and her mother's
> boyfriend, the defendant.    In the early morning hours of June 16,
> 2017, K.C. had fallen asleep on the couch in the living room.
> According to K.C., at about 6:00 a.m., she was awakened by defendant,
> who had placed his penis in her hand.    K.C. hurriedly turned over on
> the couch and feigned still being asleep, until defendant walked away.
> Later that same day, K.C. told her brother, who told his mother and
> uncle.    The police were called.    Defendant testified at trial.    He had
> prior convictions for forgery, simple burglary, and unauthorized entry
> of an inhabited dwelling.    Defendant admitted that he was in the
> living room on the couch with K.C. the night she fell asleep.    He
> insisted, however, that he never removed his penis from his clothes.[20]
>
> [1] The victim is referred to herein by her initials.    *See* LSA-R.S. 46:1844W.

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure

---

[20] *State v. Leboeuf*, 2018 KA 1777 (La. App. 1 Cir. 8/2/19), 281 So. 3d 714, 715 ; State Rec., Supp. Vol.
1 of 1.

questions of fact, pure questions of law, and mixed questions of both.     A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."     28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct.     The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").     With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."     28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."     *Bell v. Cone*, 535 U.S. 685, 694 (2002).     A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.     *Williams v. Taylor*, 529 U.S. 362, 405B06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).     An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the

particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts— from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA de novo standards of review. *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not

adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

*Analysis*

## A.    Ineffective Assistance of Counsel (Claim One)

LeBoeuf asserts that he was denied effective assistance of counsel due to his counsel's failure to investigate and call an alibi witness.    He further claims that his counsel was ineffective in failing to move for a continuance when the bill of information was amended. Finally, LeBoeuf claims that his counsel failed to obtain a surveillance video that would have shown that he was not guilty of the crime charged.

The state district court rejected LeBoeuf's claims that his trial counsel rendered ineffective assistance raised in his application for post-conviction relief.[21]    The Louisiana First Circuit Court of Appeal denied LeBoeuf's related writ application.[22]    The Louisiana Supreme Court denied writs finding "Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)."[23]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984).    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the

---

[21]    State Rec., Vol. 3 of 3, State District Court Order denying post-conviction relief, 10/26/20.

[22]    *State v. Leboeuf*, No. 2020 KW 1354, 2021 WL 1575442 (La. App. 1 Cir. Apr. 22, 2021); State Rec., Vol. 3 of 3.

[23]    *State v. LeBoeuf*, 2021-KH-00725 (La. 10/19/21), 326 So.3d 247 (per curiam); State Rec, Vol. 3 of 3.

evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). "[I]t is necessary to 'judge … counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Harrington*, 562 U.S. at 104 (*citing Strickland*, 466 U.S. at 689).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, a reasonable

probability is "a probability sufficient to undermine confidence in the outcome."    *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694).    In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."    *Harrington*, 562 U.S at 105.    The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.    The *Strickland* standard is a general one, so the range of reasonable applications is substantial.    Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).    When § 2254(d) applies, the question is not whether counsel's actions were reasonable.    The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations and quotation marks omitted).

Accordingly, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."    *Cullen*, 563 U.S. 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009) ).    The federal courts must look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."    *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S.Ct. at 1419 n. 2).    Furthermore, the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."    *Moore v. Johnson*,

194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689–90); *see also Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Because the state courts rejected LeBoeuf's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the state courts' determination was neither contrary to, nor an unreasonable application of, clearly established federal law.

Initially, LeBoeuf claims that his counsel failed to investigate the case.    With respect to an attorney's duty to investigate, the controlling law provides:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.    In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.    In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 690-91).    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.    *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).

LeBoeuf presents only self-serving allegations in support of his contention that counsel was ineffective for failing to adequately investigate the evidence.    He presents no

objective evidence at all to establish that his counsel in fact failed to conduct a proper investigation.    While he claims that his counsel did not "try to obtain the surveillance-video that could have shown that petitioner's alibi was true," [24]    LeBoeuf presents no actual evidence of the existence of any surveillance video.

Next, LeBoeuf asserts that defense counsel was ineffective in failing to subpoena Winfred LaFont to testify.[25]

> As the United States Fifth Circuit Court of Appeals has explained:
>
> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.    For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.    This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").    For the following reasons, LeBoeuf has failed to establish ineffective assistance for failing to subpoena LaFont under *Strickland*.

---

[24]  Rec. Doc. 3-1, p. 8.

[25]  While LeBoeuf refers to the witness as "Winford LaFont," the record reflects that his name is Winfred LaFont.    *See* State Rec., Vol. 3 of 3, Trial Transcript (con't), p. 321, 7/16/18.

LeBoeuf claims that LaFont would have testified that he was in the living room with LeBoeuf and the victim the entire time and did not observe anything occur.    A police report indicates that deputies interviewed LaFont, the victim's grandfather, on June 16, 2017.[26] According to the report,

> Mr. LaFont stated [victim] was on one side of the sectional couch and he was on the other with Mr. Leboeuf in the middle talking to him.    Mr. LaFont stated that he was up the entire time and did not observe anything occur.    Mr. LaFont did state sometime in the morning [victim] got up to go to the restroom and returned about 2 minutes later.    Mr. LaFont stated shortly after [victim] returned Mr. Laboeuf went to take a shower.    Mr. LaFont stated Mr. Laboeuf returned and continued to talk to him.[27]

Significantly, the evidence of record shows that LaFont died in February 2018.[28] Therefore, it was impossible for defense counsel to have subpoenaed him to testify at the trial in July 2018.    To the extent that LaBoeuf claims that his counsel was ineffective in failing to preserve LaFont's testimony for trial, that claim also fails.    "Depositions and other methods of preserving testimony are rare in criminal proceedings," and the failure to take such an "extraordinary step" is not grounds for habeas relief.    *Clark v. Cain*, Civ. Action No. 15-cv-2834, 2018 WL 6594546, at *8 (W.D. La. Dec. 10, 2018), *adopted*, 2019 WL 982400 (W.D. La. Feb. 28, 2019), *certificate of appealability denied*, 2020 WL 6253333 (5th Cir. May 28, 2020), *cert denied*, 141 S.Ct. 882 (2020).

While LaFont is deceased and was, therefore, unavailable to testify at trial, defense counsel, nonetheless, elicited testimony relating to LaFont's statement to police.    On cross-examination, Sergeant Rodney Morrison testified that LaFont had been interviewed by the

---

[26]  State Rec., Vol. 3 of 3, Primary Narrative by Brad Hicks, 6/18/17.

[27]  *Id.*

[28]  State Rec., Vol. 3 of 3, Trial Transcript (con't), p. 321, 7/16/18.

initial deputy who responded to the scene.[29]     Sergeant Morrison confirmed that LaFont did not see LeBoeuf inappropriately touch the victim.[30]     Additionally, the victim confirmed that LaFont was present in the living room with her and LeBoeuf at the time of the incident.[31] She testified that she did not tell her grandfather what happened because he was sleeping and she did not think he would believe her.[32]     The victim agreed that her grandfather would have been in a better position to know whether he was awake or not.[33]     Thus, the jury was aware that LaFont told police that he did not see LeBoeuf inappropriately touch the victim.

For the foregoing reasons, LeBoeuf has failed to show counsel was ineffective for failing to subpoena LaFont to testify at trial or to preserve his testimony for trial or any resulting prejudice.     Accordingly, this claim lacks merit.

LeBoeuf also claims he was denied effective assistance of counsel when counsel failed to request a continuance when the bill of information was amended three days prior to trial. On August 16, 2017, LeBoeuf was originally charged with sexual battery in violation of La. Rev. Stat. § 14:43.1(C)(2), which carries a penalty of imprisonment at hard labor of not less than 25 years and no more than 99 years.     Nearly a year later, and three days prior to trial, on July 13, 2018, the prosecution amended the charge to indecent behavior with a juvenile in violation of La. Rev. Stat. § 14:81, which carries a penalty of imprisonment at hard labor of not less than two years and no more than 25 years.     *See* La. Rev. Stat. § 14:81(H)(2).

---

[29]   State Rec., Vol. 2 of 3, Trial Transcript, p. 288, 7/16/18.

[30]   *Id.*

[31]   State Rec., Vol. 3 of 3, Trial Transcript (con't), p. 321, 324, 329-30, 7/16/18

[32]   *Id.*, at pp. 324, 329-30.

[33]   *Id.*, at p. 330.

The prosecutor explained that he had discussed with defense counsel a possible plea resolution wherein the prosecution would amend the charge and agree to a two-year sentence.[34]    While LeBoeuf declined the plea offer, the prosecution nonetheless amended the charge.

"[A] decision on whether or not to seek a continuance is inherently one of trial strategy and, as such, is generally accorded great deference."    *Johnson v. Cain*, Civ. Action No. 08-4208, 2009 WL 2366385, at *8 (E.D. La. July 29, 2009); *Brooks v. Cain*, Civ. Action No. 06-1869, 2009 WL 3088323, at *3 (E.D. La. Sept. 21, 2009).    Importantly, counsel is not ineffective for failing to request a continuance unless it is reasonably probable that the trial court would have granted that request.    *See United States v. Flores-Ochoa*, 139 F.3d 1022, 1024-25 (5th Cir. 1998).    Moreover, counsel is "not ineffective for failing to move for an unnecessary continuance."    *Lopez v. United States*, Nos. 3:12-CV-4515-D and 3:12-CR-0086-D, 2013 WL 3870020, at *4 (N.D. Tex. July 26, 2013); *accord Reed v. Schriro*, No. CV 04-2755, 2007 WL 521016, at *9 (D. Ariz. Feb. 14, 2007), *aff'd*, 290 F. App'x 982 (9th Cir. 2008).

In this case, the amendment of the charge in the bill of information from one sex offense to another was immaterial to the defense strategy.    The factual basis for the amended charge, that LeBoeuf had placed his penis in the victim's hand while she was sleeping, remained unchanged.    Defense counsel was not surprised by the amendment as the parties had discussed it during plea negotiations.    There is no evidence that the defense needed additional time to prepare to defend LeBoeuf on the amended charge, and petitioner makes no showing of what additional preparation was needed.    A continuance of the trial

---

[34]    State Rec., Vol. 3 of 3, Rearraignment Transcript, 7/13/18.

obviously would not have provided the defense with an opportunity to present the testimony of LaFont.

Further, the case had been pending for nearly a year and the trial had already been continued on several occasions at the request of the defense.[35]    There is simply no reason to believe that the request would have been granted if only counsel had moved for a further continuance.    Counsel cannot be ineffective for failing to pursue a futile course of action. *United States v. Manley*, Civ. Action No. 10-CV-1053, 2011 WL 2259761, *3 (E.D. Pa. June 8, 2011); *see Lindsey v. Cain*, 267 F. App'x 374, *1 (5th Cir.2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir.2002)).

Additionally, LeBoeuf has failed to demonstrate prejudice resulting from the failure to request a continuance of trial.    He has made no showing whatsoever that there is a reasonable probability that the result of the proceeding would have been different if a continuance had been requested.    A continuance is appropriate under Louisiana law where the defense can show prejudice as a result of the amendment of the charge.    La. Code Crim. P. art. 489.

In this case, defense counsel represented petitioner for a period of six months before the trial took place[36]  and was aware that the prosecution planned to amend the offense initially charged.    LeBoeuf's defense, *i.e.*, that the victim's allegations were not credible, remained the same.    There is no indication that additional evidence could have been

---

[35]  State Rec., Vol. 1 of 3, Minute Entry, 1/16/18, Minute Entry, 3/16/18; Minute Entry, 6/22/18.

[36]  *See* State Rec., Vol. 1 of 3, Motion and Order to Substitute Counsel, 2/9/18.

produced at a later trial nor is there any basis for finding that anything would have been done differently by defense counsel if the trial had been delayed.     LeBoeuf's mere speculation that the defense would have benefitted from a continuance is not sufficient to meet his burden of proof.     *Williams v. Cain*, Civ. Action No. 15-3565, 2017 WL 3491960, at *11 (E.D. La. May 12, 2017), *adopted*, 2017 WL 3480984 (E.D. La. Aug. 14, 2017).

For these reasons, the state court's denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.     LeBoeuf is not entitled to relief on this claim.

**B.      The Court Exceeded Its Jurisdiction (Claim Two)**

In his second claim, LeBoeuf asserts that the trial court "exceeded its jurisdiction from the preliminary examination[37] forward."[38]    The allegations he makes in support of this claim, however, in no way relate to the trial court's jurisdiction.    Rather, LeBoeuf simply points to evidence, specifically, LaFont's statement to police, that he claims should have exonerated him.

To the extent that LeBoeuf's jurisdiction claim is presented as an alleged violation of Louisiana law, the claim is not cognizable for federal habeas corpus review.    *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law".).    It is well-established that federal habeas review is limited to questions of a constitutional dimension.    *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).    Arguments that a trial court violated state law "do not constitute an independent basis for federal habeas relief."    *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.), *cert. denied*, 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 731 (1988), citing

---

[37]    There is no evidence of record that a preliminary examination was ever held.    Regardless, a preliminary examination is just that – preliminary – and its focus is merely on the existence of probable cause, not on the defendant's ultimate guilt or innocence.    *See State v. Holmes*, No. 65846. (La. 9/3/80), 388 So. 2d 722, 724 ("[T]he primary function of the preliminary exam is to ensure that probable cause exists to hold the accused in custody.").    Moreover, a finding of no probable cause results only in a defendant's release from custody or bail; it "is not a judicial dismissal of the case and the State may still proceed against the defendant." *State v. Lewis*, 2009–KA–0350 (La. App. 4th Cir. 2009), 28 So. 3d 548, 552.    Under Louisiana law, a finding of no probable cause at a preliminary hearing results only in a defendant's release from custody or bail, La. Code Crim. P. art. 296; it does not result in dismissal of the charge and does not prevent the State from prosecuting the charge.    When no preliminary examination occurs, "the issue is moot after conviction, at least in the absence of prejudice."    *State v. Washington*, No. 61931 (La. 10/9/78), 363 So.2d 509, 510.

[38]    Rec. Doc. 3-1, p. 10.

*Estelle*, 502 U.S. at 67–68, 112 S.Ct. at 479–80, 116 L.Ed.2d 385.    Thus, any alleged impropriety based on state law does not warrant federal habeas review or relief.

LeBoeuf also has not established a violation of federal law as required to warrant habeas relief.    He provides no explanation as to how the trial court exceeded its jurisdiction and no specific allegations as to the respect(s) in which any of his constitutional rights were violated.    To the extent that LeBoeuf claims that the statute of which he was convicted is unconstitutional, this claim is similarly wholly conclusory and lacks the necessary legal and factual support.    LeBoeuf makes no attempt to explain in what manner the statute is unconstitutional.    His conclusory allegations simply do not suffice to raise a constitutional issue for federal habeas review.    *See Allen v. Vannoy*, 659 F. App'x 792, 809 (5th Cir. 2016) ("Conclusory arguments cannot serve as a basis for habeas relief.")

LeBoeuf has not established that he is entitled to federal habeas relief on this claim.

## C.    Conviction Obtained in Violation of Due Process (Claim Three)

In his third claim, LaBoeuf claims his right to due process of law was violated when the bill of information was amended three days prior to trial.    LeBoeuf claims that Louisiana law requires a bill of information be amended at least seven days prior to trial. He also claims that he was not fully prepared to proceed to trial.

As explained previously, on July 13, 2018, three days prior to LeBoeuf's trial, the State amended the bill of information to charge him with indecent behavior with a juvenile under the age of 13.    LeBoeuf was arraigned on the charge and entered a plea of not guilty.[39]

---

[39]    State Rec. Vol. 3 of 3, Rearrraignment Transcript, 7/13/2018.

Contrary to LeBoeuf's claim, there is no requirement under Louisiana law that a bill of information be amended no later than seven days prior to trial.    Under Louisiana law, the prosecution may make substantive amendments to a bill of information to charge a new offense before trial commences.    *State v. Williams*, 44,418-KA (La. App. 2 Cir. 6/24/09), 15 So. 3d 348, 353-54; *State v. Olsen*, 496 So. 2d 1260, 1264 (La. App. 1 Cir. 1986); *see also State v. Ignot*, 29745-KA, 29746-KA (La. App. 2 Cir. 9/24/97), 701 So. 2d 1001, 1013 (prosecution was entitled to amend information to charge unauthorized use of a motor vehicle in violation of La. Rev. Stat. § 14:68.4 rather than unauthorized use of a movable with a value greater than $1,000 under La. Rev Stat. § 16:68(B) the day of trial, when first prospective juror had not been called) (citation omitted).

Further, to the extent that LeBoeuf claims that the amendment to the bill of information violated Louisiana law, he has not stated a cognizable claim for federal habeas review.    28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").    Thus, insofar as LeBoeuf's claim rests upon the proper interpretation and application of state procedural law, it does not provide him a basis for federal habeas relief.

LeBoeuf's due process claim also fails.    Due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.    *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).    Claims asserting violation of due process rights present a mixed question of law and fact for purposes of applying the AEDPA deferential standards of review.    *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).    The United States Supreme Court has held that an indictment or bill of

information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy. *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008).

Sufficiency of a state court bill of information or indictment will not be reviewed by a federal habeas court under § 2254, unless it can be shown that it is so defective that it deprives the convicting court of jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th 1985). To attain the necessary clarity in its language, Louisiana law describes the indictment as follows:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

La. Code Crim. P. art. 464.

The amended bill of information charged LeBeouf with "Indecent Behavior with a juvenile under the age of 13, by committing acts with the intention of arousing of either person, more particularly, the defendant and/or the victim K.C. (d.o.b. 9/3/2004).[40] The amended bill of information specifically cited the statutory provision he was accused of violating, La. Rev. Stat. 14:81.[41]

LeBoeuf's amended bill of information apprised him of the specific charge against him and sufficient information to determine the victim's identity. The record clearly

---

[40] State Rec. Vol. 1 of 3, Amended Bill of Information, 7/13/18.

[41] *Id.*

23

demonstrates that LeBoeuf was on notice of the charge he faced such that he was able to prepare and present a defense to the charge of indecent behavior with a juvenile under 13 years of age and avoid double jeopardy    In contrast, there is nothing to support any contention that LeBoeuf was prejudiced by the amendment to the bill of information.    The nature of the charge was clear to defense counsel and, under the circumstances, the planned defense of the matter did not change.

Accordingly, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

**IT IS RECOMMENDED** that Rusty LeBoeuf's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[42]

New Orleans, Louisiana, this   24th   day of _____March_____, 2022.

---

[42] *Douglass* referenced the previously applicable 10-day period for the filing of objections.    Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE